**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-10774

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DANIEL STEPHEN KING,

a.k.a. Daniel Steven King,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00121-RBD-DCI-1

————————————

Before ROSENBAUM, BRANCH, and TJOFLAT, Circuit Judges.

ROSENBAUM, Circuit Judge:

Daniel King appeals his conviction and sentence for possession of a firearm and ammunition by a convicted felon. He raises

various issues on appeal, some dealing with aspects of his trial and some with sentencing.

First, King says the district court erred in denying his motion for judgment of acquittal. He contends that the evidence was insufficient for the jury to find that he knowingly possessed guns and ammunition. Second, he argues that the district court erred in allowing a letter to his ex-girlfriend to come in at trial. Third, King asserts that the district court abused its discretion by excluding on hearsay grounds his out-of-court exculpatory statement to law enforcement. Fourth, he urges that during sentencing, the district court erred by applying the obstruction-of-justice enhancement under United States Sentencing Guideline ("U.S.S.G.") § 3C1.1. Fifth, King argues his sentence is substantively unreasonable in light of his criminal history and mitigating factors. Finally, he asserts that we should remand the case for resentencing under the amendment to U.S.S.G § 4A1.1(d) that took effect during the pendency of his appeal.

After careful consideration, we reject each of King's arguments and affirm his conviction and sentence.

## I.    BACKGROUND

On August 3, 2022, a federal grand jury returned an indictment charging King with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). King, through counsel, pled not guilty. The case ultimately went to trial.

King's charges stem from a domestic-disturbance call in Osceola County, Florida.[1]  King's former girlfriend Gabrielle Gifford ran from a house with her young daughter and told law enforcement that King was armed and wearing a bulletproof vest.  Once she was safe, Gifford told a deputy that King had multiple guns and "a lot of ammunition."  Then, Gifford began showing deputies pictures and videos she had taken of the firearms and ammunition inside the house.  Based on this information, an additional fifteen-to-twenty officers arrived at the scene, and law enforcement summoned a helicopter to provide surveillance over the house.

A deputy contacted King over the phone.  But he did not exit the house right away.  To the contrary, King refused to leave for about two hours.  So a negotiator spoke with King for a while.  During this time, King was "emotionally upset" and told the deputy that the guns belonged to Gifford, not him.

When King finally left the home, law enforcement obtained a search warrant.  Their search revealed nine guns, assorted magazines, and more than 1,000 rounds of ammunition.  Some guns were located in a large safe in a hallway closet and law enforcement found others in King's bedroom.  They discovered a bulletproof

---

[1] We take these facts from the evidence presented at trial and portray them in the light most favorable to the verdict.  *See United States v. Hill*, 99 F.4th 1289 (11th Cir. 2024).

4                    Opinion of the Court                    23-10774

vest, a rifle, and some magazines with ammunition in a back bed-room, which they later identified as Gifford's room.[2]

At trial, the jury heard from Gifford and several law-enforce-ment officials who were present during the incident. Gifford testi-fied about the domestic dispute between King and herself. She also insisted to the jury that all the guns and ammunition found in the house belonged to King. According to Gifford, on the day of the argument, she uncovered guns and ammunition in an open safe in a hallway closet and other firearms in King's bedroom. During Gifford's testimony, the jury saw pictures and video clips she took before she left the house on the night of the domestic disturbance. The evidence showed the locations, types, and number of firearms located in the house. One video showed King sleeping in his bed-room with two rifles out in the open and gun boxes laying on the mattress next to King as he slept.

Law enforcement also testified about the standoff with King and their search of the house. The jury watched bodycam video from one deputy who conducted the search of the house. This video and the deputy's testimony further clarified the locations, types, and number of firearms found in the home.

During trial, the government introduced, over the defense's objection, a letter King purportedly sent to Gifford. In the letter, King asked Gifford to claim ownership of the guns because—unlike King—she was not a convicted felon and would not face criminal

---

[2] King and Gifford used separate bedrooms in the house.

prosecution for owning them. Gifford identified King's handwriting and other aspects of the letter that caused her to conclude that King sent the letter to her.

At the close of the government's case, King moved for judgment of acquittal. He argued that the guns could have been antiques or replicas and asserted the government had not put forth any evidence that they were not. The district court denied the motion without much discussion.

Then the defense then put on its case. Ultimately, though, the jury found King guilty of being a felon in possession of firearms and ammunition.

Later, the district court sentenced King to 120 months' imprisonment followed by three years of supervised release. The sentence included an enhancement under U.S.S.G. § 3C1.1 for obstruction of justice based on the letter King sent to Gifford asking her to claim ownership of the guns. The court also added two criminal-history points under U.S.S.G. § 4A1.1(d) because King committed the instant offense while he was on probation for another offense.

King now appeals his conviction and sentence.

## II.    DISCUSSION

We take King's arguments in turn and explain why we reject each of them.

A.    <u>Sufficiency of the Evidence</u>

King first contends the district court erred in denying his motion for judgment of acquittal because he says the evidence was

insufficient for the jury to find that he knowingly possessed the guns and ammunition.  Essentially, he says no evidence showed that he either interacted with the safe or areas where the firearms were found.  King contends no reasonable jury could have found that he had dominion or control over any of the firearms or ammunition, and his motion for acquittal should have been granted. We disagree.

For starters, King arguably failed to properly preserve his challenge to the sufficiency of the evidence because, although he moved for judgment of acquittal at the close of the government's case, he put on a defense and did not renew his motion at the close of all the evidence.  *See United States v. Williams*, 144 F.3d 1397, 1402 (11th Cir. 1998) (a defendant's presentation of evidence after the denial of a motion for judgment of acquittal made at the close of the government's case-in-chief operates as a waiver of any objection to the decision on the motion).  When the defendant fails to preserve a motion for judgment of acquittal, we will entertain an appeal based on such an objection only if refusal to do so would result in manifest injustice, which requires "a finding that the evidence on a key element of the offense is so tenuous that a conviction would be shocking."  *Id.* (quoting *United States v. Tapia*, 761 F.2d 1488, 1491–92 (11th Cir.1985)).

This is not such a case.  As we discuss below, the jury reasonably concluded that King possessed firearms and ammunition based on testimony, videos, and other evidence from Gifford.

And we would reach that same conclusion even if we assumed that King properly preserved his judgment for acquittal and so reviewed de novo the disposition of that motion. *United States v. Duldulao*, 87 F.4th 1239, 1251 (11th Cir. 2023); *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016). Under a de novo standard, we can't reverse a conviction for insufficiency of the evidence unless we conclude that no reasonable factfinder could find proof of guilt beyond a reasonable doubt. *United States v. Guevara*, 894 F.3d 1301, 1307–08 (11th Cir. 2018). In conducting our review, we view the facts, and draw all reasonable inferences from them, in the light most favorable to the government. *United States v. Clay*, 832 F.3d 1259, 1293 (11th Cir. 2016). If "any reasonable construction of the evidence . . . would have allowed the jury to find the defendant guilty beyond a reasonable doubt," we won't disturb the verdict. *Id.* at 1294 (citation and internal quotation marks omitted). Nor must the evidence exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc).

Turning to the charge at issue, under 18 U.S.C. § 922(g)(1), it is unlawful for anyone who has been convicted of a felony to knowingly possess a firearm that has been shipped or transported in interstate commerce. 18 U.S.C. § 922(g). Here, no one disputes that the firearms and ammunition were shipped or transported in interstate commerce. Instead, King suggests the evidence did not support the conclusion that he knowingly possessed a firearm or ammunition.

Our case law teaches that "[p]ossession of a firearm may be either actual or constructive." *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). "Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm." *Id.* A defendant's presence near a firearm or association with another person who possesses the firearm is insufficient, but the "firearm need not be on or near the defendant's person in order to amount to knowing possession." *Id.* (citation and internal quotation marks omitted). To establish constructive possession, the government must prove that the defendant "(1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and control over that firearm." *Id.*

Overwhelming evidence supports the jury's reasonable conclusion that King was aware of and had control over the guns and ammunition. The evidence showed that officers found nine guns and over 1,000 rounds of ammunition in King's home. Gifford testified that the guns were not hers but King's. She also testified that King had a gun safe delivered to the house, and she later found guns and ammunition in the unlocked safe.

According to Gifford, King became angry with her on the day of the incident for touching his guns because they belonged to him. Plus, Gifford said, the bulletproof vest and gun magazines, which law enforcement found in her bedroom during a search, were not typically in her room.

Video evidence confirmed Gifford's testimony. It showed King sleeping in his bedroom, with various guns strewn about. It also showed guns and ammunition in the hallway closet, as Gifford recalled. The jury also saw bodycam footage of the officers' search of the home, revealing the number, types, and locations of the weapons. And the jury saw King's letter to Gifford, urging her to claim ownership of the guns. The jury also knew of King's two-hour stand-off with police, which gave him time to move the weapons and ammunition.

This evidence allowed the jury to reasonably conclude beyond a reasonable doubt that King knew about and had the ability and intent to exercise control over the guns. Under either a de novo review or a review for manifest injustice, we see no error.

B.    Admissibility of King's Letter to Gifford

King next argues that the district court erred when it allowed the admission of his letter to Gifford urging her to claim ownership of the guns. In King's view, the government did not properly authenticate the letter. Rather, he urges, the court should have denied admission because the letter was unsigned, unstamped, unmailed, and untrackable, and it was written by an unknown person. King continues, even if the letter had been authenticated, the court should have excluded it under Federal Rule of Civil Procedure 403, as unduly prejudicial.

We review a district court's ruling on admission of evidence for abuse of discretion. *United States v. Akwuba*, 7 F.4th 1299, 1313 (11th Cir. 2021); *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th

Cir. 2000).  This standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc) (citation and quotation marks omitted).

Rule 901 of the Federal Rules of Evidence guides our inquiry.  That rule provides, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  To satisfy this standard with extrinsic evidence, a party must present only "some competent evidence . . . to support authentication." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990) (citation omitted); *see also United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011).

Examples of evidence that would satisfy Rule 901 include testimony of a witness with knowledge that an "item is what it is claimed to be," a "nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation," and the "appearance, contents, substance, . . . or other distinctive characteristics of the item, taken together with all the circumstances." *See* Fed. R. Evid. 901(b)(1), (2), and (4).  A district court's determination of authenticity is "merely a preliminary evaluation" that "leaves the ultimate decision on genuineness to the jury." *United States v. Caldwell*, 776 F.2d 989, 1003 (11th Cir. 1985).

Here, the district court did not abuse its discretion in overruling King's authentication objection to the letter.    The

government presented sufficient evidence for the jury to determine the letter's genuineness.

While on the stand, Gifford testified that in late June or July, she received a letter. She said she knew the letter was from King because she recognized his handwriting, which she had seen before. Gifford explained she also knew the letter was from King because it referred to her daughter by name and the letter referenced a conversation she had with King when he first was arrested. Not only that, Gifford testified, but she did not know anyone else who would contact her about guns.

Gifford's testimony satisfied Rule 901's authentication requirements. *See* Fed. R. Evid. 901(b)(2). The district court did not abuse its discretion in admitting the letter. *See* Fed. R. Evid. 901(a); *Frazier*, 387 F.3d at 1259.

King's Rule 403 challenge fares no better. As an initial matter, King never objected to the admission of the letter on this basis; he objected on authentication grounds only. So we review for plain error. *See United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007) (when a defendant fails to preserve an evidentiary ruling by raising a contemporaneous objection, we review for plain error). To prevail under plain-error review, a challenging party must show "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Patterson*, 595 F.3d 1324, 1326 (11th Cir. 2010). And "[i]t is the law of this circuit that, at least where the explicit language of a statute or rule does not

specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).

Federal Rule of Evidence 403 allows district courts to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Still, we've explained that the district court's discretion to exclude evidence under Rule 403 is "narrowly circumscribed" because it is an extraordinary remedy. *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020).

Here, King has not shown that the probative value of the letter was substantially outweighed by its prejudicial effect. Nor has King cited any case law holding that the admission of the letter was plain error under the circumstances of this case. *See Lejarde-Rada*, 319 F.3d at 1291. We find no error.

C.    Admissibility of King's Out-of-Court Statements

Next, we consider whether the district court properly excluded King's out-of-court statements as hearsay.

During a break in the trial, the defense proffered the testimony of Osceola County Deputy Jalen Crist to see whether the court would allow the testimony. As part of the proffer, Deputy Crist testified about his interaction with King during the two-hour standoff. Deputy Crist recounted that while police were present on

the scene and King was still in the house, he called King on the phone. As Deputy Crist described King, he was "emotionally up-set" during the call. King told Deputy Crist that he worried that, if he left the residence, a police officer would shoot him. King also said that the guns did not belong to him, but rather, were Gifford's. As King told it, Gifford had obtained the guns for protection from her "crazy" ex-boyfriend.

But on cross-examination, Deputy Crist agreed that King did not express that Gifford was putting the firearms in the house dur-ing King's call with the deputy. Instead, Deputy Crist testified, "it seemed like everything that [King] was -- the statements he was making were things that had already occurred before my phone call with him."

Following Deputy Crist's proffer, the district court sustained the government's objection to his testimony about King's out-of-court statements. The court rejected King's contention that the testimony qualified as a present-sense-impression and did not ad-dress whether the excited-utterance exception to the hearsay rule applied.

On appeal, King asserts that the district court should have admitted his statements to Deputy Crist as non-hearsay because King sought to rely on them not for their truth but rather to show Gifford's motive to inculpate him. In the alternative, King argues that even if the statements are hearsay, they fall under an exception as either a present-sense impression or an excited utterance. He claims he made his statements spontaneously, under the stress of

the standoff, and they "concerned earlier alleged events." We disagree.

As we've already noted, the determination of the admissibility of evidence rests within the discretion of the trial judge, and we do not disturb that determination "absent a clear showing of an abuse of discretion." *United States v. Baptiste*, 935 F.3d 1304, 1311 (11th Cir. 2019). Although we review the exclusion of evidence for an abuse of discretion, any error is ultimately subject to harmless-error review. *United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018). So we won't overturn an evidentiary ruling unless the objecting party has shown "a substantial prejudicial effect" from it. *Barton*, 909 F.3d at 1331. (citation omitted); *see also United States v. Rutgerson*, 822 F.3d 1223, 1239 (11th Cir. 2016) (evidentiary errors are not grounds for reversal "unless there is a reasonable likelihood that they affected the defendant's substantial rights."). Overwhelming evidence of guilt is a factor that we consider in finding harmless error. *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999).

Here, the district court did not abuse its discretion when it excluded, as hearsay, King's out-of-court statements to Deputy Crist. Hearsay is an out-of-court statement that is offered as evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). We have no trouble concluding that King sought to admit his out-of-court exculpatory statements to establish the truth of the matter asserted—that Gifford owned the guns

and he didn't.  So the district court properly excluded the testimony as hearsay.

Nor did King's statements fall within any exception to the hearsay rule, Fed. R. Evid. 803.

Rule 803(2) creates an "excited utterance" exception for hearsay statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "The basis for the 'excited utterance' exception . . . is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation." *Idaho v. Wright*, 497 U.S. 805, 820 (1990); *see also Michigan v. Bryant*, 562 U.S. 344, 361 (2011) (explaining that excited utterances "are considered reliable because the declarant, in the excitement, presumably cannot form a falsehood."). In determining whether the excited-utterance exception applies, we consider the "totality of the circumstances," not just the length of time between the event and the statement. *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010).

Here, to be sure, King was under the stress of the situation when he made the statements to Deputy Crist. Still, the circumstances support the district court's conclusion that a possibility of fabrication existed. *See Wright*, 497 U.S. at 820; *see also Bryant*, 562 U.S. at 361. King's statements that Gifford owned the guns were self-serving, and he made them when he knew he was the focus of a criminal investigation. The statements also occurred when King had a motive to fabricate an exculpatory version of events, and he

made them within the two-hour timeframe when he was in a standoff with police. Finally, during this time, King had access to Gifford's bedroom to make the evidence match his statement.

Given the totality of the circumstances, the district court's exclusion of the statements fell well within the range of permissible decisions and was not an abuse of discretion. *See Baptiste*, 935 F.3d at 1311.

We also reject King's argument that his statements should have been admitted as present-sense impressions. Federal Rule of Evidence 803(1) creates a "present sense impression" exception for hearsay statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "The underlying theory of this exception is that the substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation." *United States v. Scrima*, 819 F.2d 996, 1000 (11th Cir. 1987) (citation omitted).

Here, King's statements to Deputy Crist did concern an event or condition. But King did not make these statements contemporaneously with the event. Nor did he make them immediately after he perceived the event. Instead, King's statements were about prior alleged occurrences. And the district court determined that the statements did "not have the indicia of reliability that you would normally assign to a present sense impression which would be a recitation by a percipient witness of things that are happening around him or her being reported under the stress of the events."

The district court did not abuse its discretion when it determined the statements were not present-sense impressions.

Even if we were to find that the district court erred in excluding King's out-of-court statements, its ruling did not affect King's substantial rights. The government presented overwhelming evidence of King's guilt. *Guzman*, 167 F.3d at 1353; *Rutgerson*, 822 F.3d at 1239. The jury heard persuasive testimony from Gifford, and reviewed pictures and videos of the guns, ammunition, and bulletproof vest. And some of these items sat alongside King as he slept in his bedroom. The jury also saw the letter King wrote to Gifford asking her to claim the guns as her own so he would not get in trouble.

In sum, the district court did not abuse its discretion in excluding King's out-of-court exculpatory statements to Deputy Crist because they were hearsay and did not qualify under any hearsay exception. And in any case, any error in excluding King's statements was harmless because the evidence of King's guilt was overwhelming.

D.    Applicability of Obstruction-of-justice Enhancement

King argues that the district court erred when it applied an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 during sentencing.

Section 3C1.1 provides for a two-level increase to a defendant's offense level when

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G § 3C1.1. "Obstructive" conduct under § 3C1.1 includes, for example, "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so." *Id.*, comment. (n.4(A)).[3]

Here, the district court enhanced King's sentence based on King's letter to Gifford asking her to claim the guns as her own. King criticizes the district court for relying on the "flimsy" testimony of Gifford to impose the enhancement. He also argues that obstruction of justice enhancement was inappropriate because the district court rested its application on "unreliable hearsay testimony."

When we consider a district court's imposition of an adjustment for obstruction of justice, we review the court's factual

---

[3] This Court, sitting en banc, has held that courts "may not defer" to the commentary to the Sentencing Guidelines "if uncertainty does not exist" in the Guidelines itself. *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (en banc). Still, we have relied on the commentary when "[n]o party contest[ed] the commentary's validity . . . or the propriety of its interpretation of [the guideline's] text." *United States v. Jews*, 74 F.4th 1325, 1327 n.2, 1328 (11th Cir. 2023). Here, neither party contests the commentary's validity.

findings for clear error and its application of those facts to the Guidelines de novo. *Guevara*, 894 F.3d at 1311. The government bears the burden to introduce "'sufficient and reliable' evidence" to prove the facts necessary by a preponderance of the evidence to establish the applicability of the enhancement over a defendant's factual objection. *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013).

The district court did not err in applying the obstruction-of-justice enhancement here. The letter from King to Gifford, along with Gifford's testimony, provided a basis for the court to reasonably conclude by a preponderance of the evidence that King had unlawfully attempted to influence a witness to lie to law enforcement and suborn perjury at trial. *See* U.S.S.G. § 3C1.1, comment. (n.4). As we've already discussed, the government introduced sufficient and reliable evidence to show that King wrote the letter to Gifford. Gifford identified King's handwriting, emphasized the letter mentioned her daughter by name, and pointed out that the letter identified a conversation King had with Gifford shortly after he was arrested.

We also reject King's claim that the district court relied on inadmissible hearsay by considering the letter for sentencing purposes. As an initial matter, King did not raise this argument in the district court, so we review for plain error. But no error occurred.

For starters, the government didn't offer the letter to prove the truth of the matter asserted—that the guns and ammunition were Gifford's. Rather, the government offered the letter to show

that King urged Gifford to falsely claim ownership of the guns. *See* Fed. R. Evid. 801(c)(2). So the letter wasn't hearsay in any event.

But as it turns out, the letter also wasn't hearsay because the government offered it as a statement made by a party opponent against that party. *See* Fed. R. Evid. 801(d)(2) (categorizing an opposing party's statement as non-hearsay under certain circumstances). Under Rule 801(d)(2), King's statement was admissible against King because the United States established that King made the statement "in an individual or representative capacity." Fed. R. Evid. 801(d)(2); *see also United States v. Holland*, 117 F.4th 1352, 1356 (11th Cir. 2024).

In short, the district court did not err by applying the obstruction-of-justice enhancement based on King's letter.

E.    Reasonableness of King's Sentence

We next consider King's challenge to the reasonableness of his 120-month sentence.

When a defendant preserves a substantive-reasonableness challenge, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The question is whether "the § 3553(a) factors, on the whole, justif[y] the sentence." *Id*. at 59–60.

Section 3553(a) requires a district court to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes § 3553(a)(2) lists. These include the need to reflect the seriousness of the offense, to promote respect for the law, to

provide a just punishment, to deter criminal conduct, to protect the public, and to provide educational and vocational training, medical care, and other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D). Other § 3553(a) factors account for the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities among defendants, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (a)(3)–(7).

King, as the party challenging the sentence, bears the burden of establishing that it is unreasonable based on the record as a whole, the § 3553(a) factors, and the substantial deference owed to sentencing courts. *United States v. Gomez*, 955 F.3d 1250, 1255 (11th Cir. 2020) (citation omitted). We have "underscored" that we must give "due deference" to the district court to consider and weigh the proper sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (internal quotation marks omitted). We will vacate a sentence based on substantive unreasonableness only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).

Under § 3553(a), we must consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6). But a "well-founded claim of disparity . . .

assumes that apples are being compared to apples." *United States v. Sotis*, 89 F.4th 862, 880 (11th Cir. 2023) (citation omitted, alteration in original).

Given the record and the deference the district court enjoys, we cannot say that King's sentence is substantively unreasonable. The district court imposed the statutory maximum sentence because of the seriousness of the crime and King's criminal history. As the court emphasized, King not only possessed a "proliferation" of firearms and ammunition, but he also kept them within close proximity to, and easily accessible to, Gifford's young daughter. The court further noted that one of the firearms was a short-barreled rifle that was unregistered and capable of accepting large-capacity magazines.

In the district court's view, "many of the 3553 factors" militated in favor of a high-end guideline sentence. "[P]aramount among those" was the need to protect the public from the possibility of future recidivism. As the court noted, King had repeatedly been convicted of criminal offenses and had also previously violated conditions of his probation in many ways. Indeed, the court emphasized, King committed the offense here while he was on probation. Beyond that, the court observed, King tried to convince Gifford to obstruct justice by falsely claiming ownership of the firearms.

As for King's mitigating factors, the district court took them into consideration, contrary to King's contention. The court recognized King's mental-health issues and long-standing drug

addiction.  It also mentioned the need for King to receive the necessary treatment for these issues while incarcerated, and it ordered his placement in appropriate programs as part of his sentence. Likewise, the court announced, on release from incarceration, King would participate in a substance-abuse program and mental-health program.  Put simply, the district court expressed its full consideration of the § 3553(a) factors and King's mitigating evidence.

The district court also considered disparities in sentencing, contrary to King's contention.  King relies on statistics from the Sentencing Commission to suggest that his sentence is disproportionately long compared to similarly situated defendants.  But King does not make an apples-to-apples comparison.  Unlike other defendants convicted of the same offense, King, the district court determined, had several aggravating factors that we've already discussed.  *See Sotis*, 89 F.4th at 880.  And the court specifically explained that in announcing its sentence, the court had considered all the advisory sentencing guideline factors identified in § 3553(a) and that the sentence imposed was sufficient but not greater than necessary to achieve the statutory purpose of sentencing.

After reviewing the record, we see no evidence suggesting that the district court failed to consider any proper factor.  Nor does the record support the conclusion that the district court considered an improper factor.  Ultimately, the district court's weighing of the § 3553(a) factors and its sentence fell within its wide discretion.  *See Shabazz*, 887 F.3d at 1224; *Irey*, 612 F.3d at 1190.  We therefore find King's sentence to be substantively reasonable.

F.    Application of Amendment 821

Finally, King seeks for us to vacate his sentence and remand for resentencing based on a guideline amendment that became effective while his appeal was pending. King acknowledges that the district court correctly applied U.S.S.G. § 4A.1.1(d) at the time of his sentencing. But he points out that, while his appeal was pending, the Sentencing Commission changed the section by way of Amendment 821, reducing the offense-level calculation for certain defendants. King asks us to remand for resentencing under the newly amended U.S.S.G. § 4A.1.1(e).

At the time of King's sentencing, the Sentencing Guidelines provided for a defendant to receive two criminal-history points ("status points") if they committed their offense of conviction while under any criminal-justice sentence. *See* U.S.S.G. § 4A1.1(d) (Nov. 2021). So here, King received two status points for committing his offense while serving a term of probation.

But Amendment 821, which went into effect in November 2023, changed the way the Guidelines score these "status points." In the Amendment, which the Commission stated should apply retroactively, the Commission struck U.S.S.G. § 4A1.1(d) and replaced it with § 4A1.1(e). *See* U.S.S.G. Supp. App. C., Amend. 821; *see also* U.S.S.G. § 1B1.10(d). As relevant here, the current version of the Guidelines gives a defendant only one status point if the defendant (1) received 7 or more criminal-history points under U.S.S.G. § 4A1.1(a) through (d); and (2) committed the instant offense while under any criminal-justice sentence, including probation. *See*

U.S.S.G. § 4A1.1(e) (Nov. 2023). According to King, if the new version of § 4A1.1(e) were applied, he would not have received two status points. King argues we should vacate his sentence and remand for resentencing using the current Guidelines so that he can benefit from the change provided by Amendment 821. We disagree.

In reviewing a district court's application of the Sentencing Guidelines on appeal, we "apply the version of the Guidelines in effect at the time of the defendant's sentencing." *United States v. Martinez*, 172 F.4th 1306, 1315 (11th Cir. 2026) (per curiam). On direct appeal, though, we consider amendments to the Sentencing Guidelines if they are "clarifying" rather than "substantive." *United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011). As a result, we apply clarifying amendments retroactively on appeal, but no substantive amendments. *Id.*; *see also United States v. Handlon*, 97 F.4th 829, 833 (11th Cir. 2024) (per curiam) ("We cannot give [the substantive amendment] retroactive effect in this appeal").

To determine whether a guideline amendment is substantive or clarifying, we consider a number of factors: (1) whether the amendment alters the text of the guideline itself, or whether it alters only the commentary; (2) whether the Sentencing Commission has described the amendment as clarifying or whether the Commission's statements "reflect a substantive change;" (3) whether the Sentencing Commission has included the amendment in the list of retroactive amendments in U.S.S.G. § 1B1.10; and (4) whether the amendment overturns circuit precedent, which would

26                    Opinion of the Court                    23-10774

suggest a substantive change. *See Martinez*, 172 F.4th at 1315–1316; *Jerchower*, 631 F.3d at 1185.

Upon consideration, we conclude that Amendment 821 is substantive. First, it directly "alters the text" of § 4A1.1(d), rather than merely adding commentary. Second, the amendment effects a "substantive change" in punishment. As we've explained, § 4A1.1(d) previously provided for two status points, but the newer version contained in § 4A1.1(e) provides for only one status point. By not assessing as many status points to certain defendants, the amendment does more than merely clarify the applicability of § 4A1.1. As the Second Circuit has explained, the amendment "(1) reduces the upward adjustment received by offenders who committed the instant offense while under any criminal sentence and (2) limits this adjustment to defendants with seven or more criminal history points." *United States v. Rivera*, 115 F.4th 141, 154 (2d Cir. 2024).

Third, while it's true that the Sentencing Commission has included aspects of Amendment 821 in the list of retroactive guideline amendments, *see* U.S.S.G. § 1B1.10(d),[4] we do not give great

---

[4] Sentencing Guideline § 1B1.10 provides in relevant part, "In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." *See* U.S.S.G. 1B1.10(a)(1). Subsection (d) lists Amendment 821 (parts A and B, subpart 1) as an amendment covered by U.S.S.G. § 1B1.10. *See* U.S.S.G. § 1B1.10(d).

23-10774                Opinion of the Court                27

weight to that factor because the Commission has, at times, made substantive amendments retroactive. *See, e.g., Hughes v. United States*, 584 U.S. 675, 684 (2018) (discussing Amendments 782 and 788, which together gave retroactive effect to the reduction of base offense levels for most drug offenses); *United States v. Jones*, 548 F.3d 1366, 1368 (11th Cir. 2008) (discussing Amendments 706 and 713, which together gave retroactive effect to the reduction of base offense levels for crack cocaine offenses).

Finally, the fourth factor—whether the amendment overturns circuit precedent—is inapplicable here. So it does not alter our conclusion that Amendment 821 is substantive and not clarifying.

We recognize that in a similar case, the Seventh Circuit remanded for resentencing. *See United States v. Claybron*, 88 F.4th 1226, 1231 (7th Cir. 2023). But our precedent holds that "[s]ubstantive amendments to the [Sentencing] Guidelines . . . are not applied retroactively on direct appeal." *Jerchower*, 631 F.3d at 1184; *see also Handlon*, 97 F.4th at 833 (refusing to give substantive Guideline amendment retroactive effect on appeal). So we do not remand for resentencing here. And in any case, in *Claybron*, the Seventh Circuit allowed a remand for resentencing under 28 U.S.C. § 2106.[5] 88 F.4th

---

[5] Section 2106 provides that the "Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or

at 1231 (holding that enactment of Amendment 821 warranted a § 2106 remand and limited resentencing on robbery convictions). But in *Claybron*, unlike here, the defendant specifically requested the appellate court to remand under § 2106. *Id.* at 1229. King did not request a remand based on § 2106 here. We therefore apply *Jerchower* and reject King's request to remand for resentencing.[6]

Our conclusion does not mean that King is left without a remedy. He can move in the district court to reduce his sentence through application of the amended § 4A1.1(e). *See* 18 U.S.C. § 3582(c).[7] Indeed, the district court has already appointed the Federal Defender's Office to represent King in such a procedure. Once this appeal is concluded, the district court can consider any such § 3582(c) motion filed by King.

---

order, or require such further proceedings to be had as may be just under the circumstances." *See* 28 U.S.C. § 2106.

[6] Even if King had asked us to remand utilizing § 2106, our authority to vacate a sentence and order a remand under that statutory section is only discretionary. *See* U.S.C. § 2106 (providing that a "court of appellate jurisdiction *may* . . . vacate [a sentence] . . . and *may* remand the cause." (emphasis added); *see also United States v. Martinez*, 606 F.3d 1303, 1304 (11th Cir. 2010).

[7] Under 18 U.S.C. § 3582(c)(2), a district court has discretion to reduce an imprisonment term if a defendant's sentence is based on a sentencing range that was later lowered by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(2).

## III.    CONCLUSION

For these reasons, we affirm King's conviction and sentence.

**AFFIRMED**.